**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**J & J SPORTS PRODUCTIONS, INC.,**

          **Plaintiff,**

**-vs-**                                    **Case No. 6:09-cv-1501-Orl-31DAB**

**JACQUELINE M. PIMENTEL, SABOR
DEL CARIBE, INC.,**

          **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR DEFAULT JUDGMENT (Doc. No. 13)**
>
> **FILED:**      **November 6, 2009**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

Plaintiff J & J Sports Productions, Inc. ("J & J Sports") sued Defendants Jacqueline M. Pimentel[1] and Sabor Del Caribe, Inc. d/b/a Sabor Del Caribe ("the Restaurant") for violation of the Communications Act of 1934, 47 U.S.C. §§ 553 & 605, on August 31, 2009. Doc. 1. Specifically, J & J Sports alleges that Defendants unlawfully intercepted and exhibited the Casamayor/Marquez

---

[1] Plaintiff sued Jacqueline M. Pimentel individually, and as an officer, director, shareholder and/or principal of Sabor Del Caribe, Inc.

boxing program ("the Program") within their commercial establishment located in Kissimmee, Florida on September 13, 2008, willfully and for financial gain. Doc. No. 1.

Based on the foregoing allegations, Plaintiff raised two substantive claims against the Defendants in the Complaint. Count I asserted that Defendant Sabor Del Caribe, Inc. and Jacqueline M. Pimentel, as a corporate officer of the Restaurant, with full knowledge that the Program was not to be received and exhibited by unauthorized entities, unlawfully intercepted or de-scrambled the satellite signal with an illegal converter box or receiver and exhibited the Program on five televisions to approximately 17 patrons, in violation of 47 U.S.C. § 605(a). Doc. No. 1 ¶¶ 17-30. Count II asserted that the same conduct also violates 47 U.S.C. § 553, which prohibits the unauthorized reception, interception and exhibition of cable services. Doc. No. 1 ¶¶ 31-39.

Defendants failed to appear or respond to the Complaint and Plaintiff moved for entry of a clerk's default and obtained clerk's defaults. Doc. No. 12. Plaintiff moved for final default judgment on its Communications Act claims, for damages of the statutory maximum of $110,000, and for fees and costs; Plaintiff also submitted affidavits in support of the default judgment. Doc. No. 13. The matter is now ripe for resolution.

## ANALYSIS

### *Standard of Review for Default Judgment*

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise properly appear pursuant to Federal Rule of Civil Procedure 55(b)(2). *DirecTV, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343 (M.D. Fla. 2003). "Judgment by default may be entered" as follows:

> If the party against whom judgment by default is sought has appeared in the action, the party or a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2).

In determining whether to enter a default judgment against a defendant, a court should consider (1) the amount in controversy; (2) whether material issues of fact or issues of substantial public importance exist; (3) whether the default is largely technical or substantive in nature; (4) whether the plaintiff has been substantially prejudiced by the delay involved; and (5) whether the grounds for default are clearly established or are in doubt. 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE, § 2685 at 32-36 (3d ed. 1998) (internal citations omitted). "Furthermore, the court may consider how harsh an effect a default might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant." *Id.* at 36-38 (internal citations omitted).

When "arriving at the judgment amount involves nothing more than arithmetic– the making of computations which may be figured from the record-a default judgment can be entered without a hearing of any kind." *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 919 (1st Cir.1988) (citing *Pope v. United States*, 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3 (1944)); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2nd Cir.1997) ("We have held that under Rule 55(b)(2) it [is] not necessary for the District Court to hold a hearing as long as it ensured that there was a basis for the damages specified in the default judgment") (internal citations and quotations omitted); *James v. Frame (In re Frame)*, 6 F.3d 307, 309-11 (5th

Cir.1993) (accord); *United States v. Ford 250 Pickup 1990*, 980 F.2d 1242, 1246 (8th Cir.1992), *reh'g* denied, 1993 U.S.App. Lexis 196 (8th Cir. Jan. 6, 1993) ("Federal Rule of Civil Procedure 55(b)(2) requires a hearing only if the court deems it necessary and proper to enable the court to enter default judgment"); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983) ("A judgment by default may not be entered without a hearing on damages unless . . . the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits"); *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir.1981) ( "It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation.").

Service of the Defendants in this case was proper. Federal Rule of Civil Procedure 55(a) provides that if a party fails to plead or otherwise defend as provided by the rule, the clerk shall enter default upon the appropriate showing. Fed. R. Civ. P. 55(a). Under Federal Rule of Civil Procedure 4(e)(1), service of a federal Complaint is accomplished in accordance with the procedure for service under the applicable state law:

> **(e) Service Upon Individuals Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
>
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>> (2) doing any of the following:
>>> (A) delivering a copy of the summons and of the complaint to the individual personally; . . .
>>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. Pro. 4(e).

Effective service of process against Defendants was accomplished through personal service of the summons and Complaint on Jacqueline M. Pimentel personally and as registered agent for Sabor Del Caribe, Inc. d/b/a Sabor Del Caribe on September 14, 2009. Doc. Nos. 9, 10. Plaintiff obtained entries of default against the Defendants on November 3, 2009, when the Defendants failed to respond to the Complaint. Doc. No. 12.

The Court finds that the Defendants' failure to timely respond to the Complaint and subsequent entry of default against them serve to admit the well pleaded allegations of Plaintiffs' Complaint, including Plaintiffs' claims for violation of the Communications Act. *See, e.g.*, *Buchanan v. Bowman,* 820 F.2d 359 (11th Cir. 1987) (in defaulting, defendants "admit the plaintiff's well-pleaded allegations of fact.").

*A. Factual Background*[2]

Shortly after the advent of Pay-Per-View broadcasts, of which J & J Sports is at the forefront, the company began to experience a serious erosion of the sales of Pay-Per-View broadcasts to commercial establishments throughout the United Sates. Doc. No. 13-3, Gagliardi Aff., ¶ 10. Based on its investigations, the company discovered that the root cause was the piracy of J & J Broadcasts by unauthorized and unlicensed establishments. Doc. No. 13-3, Gagliardi Aff., ¶ 10. J & J Sports has invested millions of dollars in the promotion of boxing broadcasts and with the increased frequency of signal piracy, its legal sales have eroded significantly; thus, it embarked on a program designed to identify and prosecute commercial establishments pirating the broadcasts. Doc. No. 13-3, Gagliardi Aff., ¶ 11, 12.

---

[2]The facts are adopted from Plaintiffs' Complaint and the Affidavits submitted in support. Doc. Nos. 1, 13.

J & J Sports is the exclusive owner of the broadcast rights to exhibit and distribute the September 13, 2008 Casamayor/Marquez broadcast to commercial locations, marketing the Program in the State of Florida for a fee. Doc. No. 13-3, Gagliardi Aff., Ex. A. The Restaurant did not purchase the rights to exhibit the Program from J & J Sports. Doc. No. 13-3, Gagliardi Aff. ¶ 6. J & J Sports hired Signal Auditing, Inc., an investigative agency, who hired an independent auditor, Gina Middleton. Doc. No. 13-3, Gagliardi Aff., ¶¶ 4, 7. Ms. Middleton visited the Restaurant on September 13, 2008 and during the audit independently verified the exhibition of the Program by the Restaurant. Doc. No. at 13-3 at 26-27, Middleton Aff. Approximately 17 individuals were in the establishment, which had a capacity to seat approximately 12 tables, or undisputably less than 100 people[3]. Doc. No. at 13-3 at 27, Middleton Aff. J&J Sports argues that it is likely that the exhibition led to an increased number of patrons and an increase in profits from food and beverages, to the financial detriment of Plaintiff and other legitimate customers.

The Restaurant did not purchase the rights to exhibit the Program, and it was not on the approved list. Doc. No. 13-3, Gagliardi Aff., ¶ 8; *See* Doc. No. 13-3, Ex. B. It is not possible for the Program to be "mistakenly or innocently intercepted." Doc. No. 13-3, Gagliardi Aff., ¶ 9.

B. *Application to Law*

Section 605 of the FCA provides that "[n]o person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney." 47 U.S.C. § 605(a). The FCA provides for

---

[3]Plaintiff does not dispute that the cost to Defendant would have been $1,000 based on the rate card, which applies for a capacity of 100 or fewer patrons. Doc. No. 13-2 at 11, 16 (rate card).

both civil and criminal penalties. In civil action, 47 U.S.C. § 605(e)(3)(C)(i)(II) allows courts to award statutory damages to a prevailing plaintiff in an anti-piracy case; § 605(e)(3)(C)(ii) authorizes the award of additional damages for willful behavior; § 605(e)(3)(B)(iii) mandates the award of attorneys' fees and allows for an award of full costs.

To establish a violation of 47 U.S.C. § 605(a), the plaintiff must establish that the defendants received, assisted in receiving, transmitted, or assisted in transmitting an interstate communication by wire or radio and broadcast, displayed, or divulged that communication to at least one other 2 person without authorization. *See Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.,* 219 F.Supp.2d 769, 773-74 (S.D. Tex. 2002) (citing 47 U.S.C. § 605(a)).

Under the Act, a court may award actual or statutory damages between $1,000 and $10,000 for each violation, 47 U.S.C. § 605(e)(3)(C)(i)(II), and if a violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award an additional $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). Under Count I in this case, by virtue of their default, Defendants (including Pimentel, as a corporate officer of the Restaurant) violated 47 U.S.C. § 605, with full knowledge that the Program was not to be received and exhibited by unauthorized entities, by unlawfully intercepting or de-scrambling the satellite signal and exhibiting the Program on five televisions to approximately 17 patrons.

Although Plaintiff originally also alleged a violation of the Cable and Television Consumer Protection and Competition Act, 47 U.S.C. § 553, for interceptions by way of cable systems, Plaintiff elects to receive damages exclusively under § 605. *See, e.g., J & J Sports Productions, Inc. v. Blackwell,* Case No. 2:07-CV-1058, 2009 WL 2171897, *2 (M.D. Ala. Jul. 21, 2009) (holding that a single broadcast cannot violate both codes sections, § 605 (satellite) and § 553 (cable)). Even

though Plaintiff concedes that it is "impossible for Plaintiff to determine precisely how Defendants in this action pirated the Casamayor/Marquez Program" because Defendants did not participate in discovery (Doc. No. 13-3); evidence that the Restaurant has satellite is provided by the auditor, Ms. Middleton, who attested to the existence of a satellite receiver on the outside of the Restaurant. Doc. No. 13-3 at 28 (photograph showing receiver).

In order to recover damages under 47 U.S.C. § 605, a plaintiff must be an "aggrieved person" within the meaning of the statute. In this case, Plaintiff's possession of proprietary rights to the Program, which was an unlawfully intercepted communication, satisfies § 605. To hold Defendant Pimentel vicariously liable in her individual capacity and as an officer, director, shareholder and/or principal of the Restaurant under 47 U.S.C. § 605, Plaintiff must show that Pimentel a had a "right and ability to supervise the violations, and that she had a strong financial interest in such activities." *J&J Sports Productions, Inc. v. Ribeirao*, 562 F. Supp.2d 498, 501 (S.D. N.Y. 2008). By virtue of the default, Pimentel has admitted that she had supervisory control over the Restaurant's decision to show the Program on September 13, 2008 and that she received financial benefit from it. Doc. No. 1. Ms. Pimentel is also listed as the registered agent and president of the corporate defendant, according to the Florida Secretary of State. *See* www.sunbiz.org (records search). Therefore, Plaintiff is entitled to joint and several liability for damages against Pimentel in an individual and corporate capacity.

C. *Amount of Damages*

Pursuant to § 605(a), a plaintiff may elect between actual or statutory damages, *see* § 605(e)(3)(C)(i), and Plaintiff moves the Court to award the maximum amount of statutory damages against Defendants of up to $110,000, plus reasonable attorney's fees and costs. Doc. No. 13. Under

§ 605(e)(3)(C)(i)(II), the court can award up $10,000 per violation. Up to an additional $100,000 in enhanced damages may be awarded when the violation was willful and committed for commercial advantage or financial gain under 47 U.S.C. § 605(e)605(e)(3)(C)(ii). By virtue of the default, the Defendants have admitted to exhibiting the Program in the Restaurant, a commercial establishment, willfully and for financial gain.

Plaintiff in this case requests such a significant amount arguing that a large award will serve as a deterrent to the "rampant piracy of events" until those pirating "realize it is just too expensive to keep stealing." Doc. No. 13-2 at 9. Another court in the Middle District of Florida, considering an award in the same type of "bar patron" satellite piracy case has awarded statutory damages based on a per-patron calculation or as a multiple of the commercial fee that would have been charged. In *Kingvision Pay-Per-View Corp., LTD. v. Wright*, 2006 WL 4756450 (M.D. Fla. Oct. 27, 2006), Judge Moody considered evidence of the fee that would have been charged to the bar for the legal transmission of the boxing event, which would have been $12.50 times the maximum occupancy of 150 persons, plus a $200 technical fee, for a total fee of $2,075. *Id*. at *2. Judge Moody then multiplied the total fee amount by three ($2,075 x 3) for enhanced statutory damages of $6,225, resulting in a total damages award of $8,300. *Id*. *3. The amount of the enhanced statutory damages was based in part on his finding: "Since it appears that this is Defendant's first known violation under sections 553 and 605 of the Communications Act, the Court finds that an additional penalty pursuant to section 605(e)(C)(ii) in the amount of three times the actual damage provides a sufficient deterrent to future violations by Defendant and other establishments." *Id*. at *3 n. 8.

A multitude of other courts have similarly assessed damages based on a per-patron basis for the maximum the bar/restaurant allows, or as a multiple of the licensing fee charged for a commercial

operation. *J & J Sports Productions, Inc. v. Guzman*, 553 F.Supp.2d 195, 200 (E.D. N.Y. 2008) (recommending $1,374 in statutory damages based on $55 per patron, and $4,121 in enhanced damages, or three times the per-patron amount, for a total of $5,495); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F.Supp.2d 59, 64 (E.D. N.Y. 2006) (awarding $1,000 in statutory damages based on $50 times 17 patrons ($850) and increasing the amount to the statutory minimum, and $10,000 in enhanced damages against the small business); *Top Rank Inc. v. Tacos Mexicanos*, Case No. 01-CV-5977, 2003 WL 21143072, *5 (E.D. N.Y. Mar. 28, 2003) (recommending enhanced award of $10,000, with the $2,500 statutory award based upon the number of patrons); *Entertainment by J & J, Inc. v. Gridiron, Inc*., 232 F.Supp.2d 679, 680 (S.D. W.Va. 2001) (awarding damages of $14,000, based on licensing fee of $17.50 per occupant, multiplying by maximum fire code occupancy of 160 persons, and multiplying result by five for total award).

A number of similar cases utilize the per-patron method for calculation of damages. *See Kingvision Pay-Per-View v. Thiaf, Inc.*, Case No. 1:05-CV-2391 (N.D. Ga. Jul. 24, 2006) (awarding § 605 damages of $1,000 multiplied by 5, for a total damages award of $5,000); *Garden City Boxing Club v. Bello*, Case No. 05-CV-1300, 2005 WL 2496062 (E.D. N.Y. Sept. 20, 2005) (recommending an award of damages against restaurant based on the maximum-capacity of patrons, $54.95 per head, the cost of an individual would pay to view the boxing match at home on pay per view ($2,198), plus $10,000 in enhanced damages for pirating of broadcast of Oscar De La Hoya fight); *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.,* 219 F.Supp.2d 769, 776 (S.D. Tex. 2002) (awarding statutory damages of $5,000, where license fee for commercial operation was $1,500, then tripling it for total damages of $15,000).

Courts use a number of factors in determining whether a defendant's willful conduct justifies increased damages: i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; iv) charging of a cover charge or premiums for food and drinks; or v) plaintiff's significant actual damages. In *Garden City Boxing Club,* 2005 WL 2496062, at *4, the judge recommended a $10,000 enhanced award – rather than licensor's request for the maximum of $100,000 – because there was no evidence that defendants had pirated any other events, had advertised the event, or charged a cover charge; even though interception of broadcast was clearly willful and could not have occurred inadvertently. The $10,000 award reflected plaintiff's estimated damages, defendants' likely commercial gain in selling food and drink to between fifteen and forty patrons, and the need to deter future theft of satellite service. *Id.*

The Court must strike a balance between deterring other incidents of piracy by these Defendants and others, and not making the award such that it will put a small business out of business. ("[I]n awarding enhanced damages, courts have borne in mind that although the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the restaurant out of business." *See Kingvision Pay-Per-View Ltd. v. Autar*, 426 F.Supp.2d 59, 64 (E.D. N.Y. 2006) (awarding $10,000 in enhanced damages against "Gate Way Beer Garden, a small business. . .[that] did not collect a cover charge and had attracted less than 20 patrons at the time the fight began") (citing *Garden City Boxing Club, Inc. v. Polanco*, Case No. 05 Civ. 3411, 2006 WL 305458, *5 (S.D. N.Y. Feb 7, 2006)).

In this case, the Court finds it appropriate to award a multiple of the rate normally charged for a commercial establishment lawfully showing the fight, for the maximum capacity allowed at the establishment. This Court has previously recommended (subsequently adopted by the district judge)

-11-

a $10,400 award to the very same sports-production Plaintiff for the pirated signal of a boxing match shown in a restaurant with the maximum capacity of 150 patrons with approximately 100 in attendance on the date of the program, where the rate card fee would have been $2,600. *See J & J Sports Production, Inc. v. Arboleda*, Case No. 6:09-CV-467-18DAB. As in this case, there was no evidence based on the auditor's affidavit that the restaurant collected a cover charge, or advertised the broadcast, or had repeated violations over an extended period of time. *Id.*; *see J&J Sports Productions, Inc. v. Guerra*, 2007 WL 539142 (E.D. N.Y. Feb. 16, 2007) (listing series of awards against "small businesses," ranging from $5,000 to approximately $10,000).

With these circumstances in mind, it is respectfully **RECOMMENDED** that Plaintiff's Motion for Default Judgment against Defendants, jointly and severally, be **GRANTED in part** and statutory damages be awarded, the equivalent of the license fee for the maximum capacity (100) of the restaurant, or $1,000, plus enhanced damages of three times the per-maximum-patron amount, or $3,000, for a total damages award of **$4,000**. This damage award should serve as a deterrent to the Restaurant and Defendant Pimentel without putting the Restaurant out of business.

D.  *Fees and Costs*

Because Defendants' liability has been established under § 605, the Court further finds that Plaintiff is entitled to its attorney's fees and costs incurred in this matter pursuant to 47 U.S.C. § 605(3)(B)(iii). Plaintiff's attorney has submitted an affidavit in support of Plaintiff's request for attorney's fees and costs. Doc. No. 13-2. Plaintiff seeks attorney's fees in the amount of $1,205.50 for 5.12 hours of his time and 2.42 of paralegal time; and costs of $730.00 for the filing and service of process fees. The Court finds that the amount of attorney's fees and costs sought to be recovered

by Plaintiff is reasonable. Accordingly, it is respectfully **RECOMMENDED** that Plaintiff's request for attorney's fees and costs in the amount of $1,935.50[4] be **GRANTED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 4, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[4] For reasons that Plaintiff does not explain, although it seeks a judgment against Defendants that is joint and several, Plaintiff divided in half the total request for fees and costs. No such apportionment is required in a judgment that is joint and several.